# Illinois Official Reports

## Appellate Court

---

### *Slay v. Allstate Corp.*, 2018 IL App (1st) 180133

---

| | |
|---|---|
| Appellate Court Caption | MARY SLAY and MARY T. SLAY, INC., Plaintiffs-Appellants, v. THE ALLSTATE CORPORATION, d/b/a Allstate Insurance Company, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-18-0133 |
| Filed | November 9, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-L-009708; the Hon. Brigid Mary McGrath, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Cohen, Rosenson & Zuckerman, LLC, of Chicago (Arthur E. Rosenson, of counsel), and Caryn Groedel & Associates, Co., LPA, of Cleveland, Ohio (Matthew S. Grimsley (*pro hac vice*) and Caryn M. Groedel (*pro hac vice*), of counsel), for appellants.<br><br>Cozen O'Connor, of Chicago (Peter J. Valeta and Corey T. Hickman, of counsel), for appellee. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Presiding Justice Delort and Justice Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    The plaintiffs-appellants, Mary Slay and Mary T. Slay, Inc. (collectively, Mary), appeal from the dismissal of Mary's second amended complaint,[1] which alleged a single count of breach of contract against defendant-appellee the Allstate Corporation, d/b/a Allstate Insurance Company (Allstate). For the following reasons, we reverse the judgment of the circuit court of Cook County and remand for further proceedings.

¶ 2                    BACKGROUND

¶ 3    This action arises out of the termination of Allstate's contract with Mary, under which Mary was an exclusive agent selling Allstate insurance, and Allstate's subsequent denial of Mary's proposed sale of her economic interest in her agency to her husband.

¶ 4    According to the second amended complaint, beginning in 1999, Mary's husband, Buddy Slay (Buddy), operated an independent Allstate agency in Lake City, Florida.[2] Mary was employed as a school guidance counselor, but she often assisted Buddy with his insurance agency.

¶ 5    In 2004, Ray McKnight, an Allstate territory manager, began "recruiting" Mary to become an exclusive Allstate insurance agent in Lake City, Florida. Ray allegedly offered Mary the opportunity to "purchase an existing book of business" from a retiring agent, Rick Bringger. However, Ray allegedly failed to disclose that "he had a conflict of interest because his wife, Faye McKnight, wanted to purchase an Allstate agent's book of business and open up her own office" in Lake City, "in direct competition with" Mary. Ray also allegedly failed to disclose to Mary that "Allstate was in the process of cancelling approximately thirty percent of the policies in Bringger's book of business" and that Allstate had "begun the process of non-renewing all mobile home policies, all commercial policies, and all landlord and rental policies in Florida."

¶ 6    The second amended complaint alleges that in February 2005, "in reliance on [Ray] McKnight's promises and representations," Mary retired from her job, obtained an $800,000 loan to purchase Bringger's book of business, and signed an exclusive agency agreement (EA Agreement), a copy of which is attached as an exhibit to the second amended complaint. The EA Agreement expressly incorporated other documents, including an "Exclusive Agency Independent Contractor Manual" (EA Manual), although the EA Manual was not attached to the second amended complaint.

¶ 7    Section XVI of the EA Agreement, entitled "Transfer of Interest," provided, in part:

> "Agency has an economic interest, as defined in this Agreement and in the incorporated Supplement and EA Manual, in its Allstate customer accounts

---

[1]The original complaint, stating a single breach of contract count, was filed in September 2016. In January 2017, Mary filed her first amended complaint, adding counts for fraud and tortious interference with contractual relations (counts II and III). On June 19, 2017, following a hearing on Allstate's motion to dismiss, the trial court granted Allstate's motion as to counts II and III with prejudice but dismissed Mary's breach of contract count without prejudice. On July 26, 2017, Mary filed the second amended complaint at issue in this appeal.

[2]Although the allegations of the complaint describe conduct in Florida, jurisdiction in Illinois is premised upon Allstate's transaction of business in Illinois. 735 ILCS 5/2-109 (West 2016).

developed under this Agreement. Subject to the terms and conditions set forth in this Agreement, and in the incorporated Supplement and EA Manual, agency may transfer its entire economic interest in the business written under this Agreement upon termination of this Agreement by selling the economic interest in the business to an approved buyer. [Allstate] retains the right in its exclusive judgment to approve or disapprove such a transfer ***."

¶ 8    The second amended complaint alleges that Mary worked as an exclusive agent "selling only Allstate insurance products and reporting directly to [Ray] McKnight." Mary subsequently "grew her book of business," gaining new customers. Allstate underwrote the insurance policies for Mary's customers and paid Mary commissions on each policy. Ray allegedly acted as Mary's "manager," and he "assessed [Mary]'s production (policies sold) on a regular basis."

¶ 9    According to the second amended complaint, in March 2005, Ray's wife opened an exclusive Allstate agency, competing directly with Mary's agency. Mary's business was also harmed by several other circumstances, including (1) in May 2005, Allstate announced that it was no longer writing commercial insurance policies in Florida and that Allstate would not renew approximately 95,000 Florida homeowner insurance policies; (2) in 2007, Allstate began "substantially increasing its insurance rates," making its products unattractive to customers; and (3) in 2008, the Florida Insurance Commission suspended Allstate's license to write new policies, due to Allstate's failure to comply with a subpoena. These and other circumstances allegedly resulted in Mary "losing more than thirty percent of her book of business," although she "continued to work hard selling policies to meet her production requirements."

¶ 10    In September 2011, Allstate terminated Mary's EA Agreement, "allegedly for failing to meet her unrealistic production requirements." Following the termination, Mary "arranged to transfer her economic interest in her customer accounts to her husband," Buddy. However, "Allstate refused to approve the transfer of [Mary]'s economic interest in her customer accounts" to Buddy. Instead, "Allstate transferred and/or sold [Mary]'s economic interest in her customer accounts, along with [Mary]'s book of business, to Faye McKnight," the spouse of Mary's manager.

¶ 11    The second amended complaint alleged that, "[i]nstead of allowing [Mary] to sell her economic interest in her agency, Allstate offered her a $40,000 'termination payment,' " which was "far less than the value of her economic interest in her agency." Mary alleges that she was "economically coerced" into accepting the termination payment because she could not otherwise afford the remaining payments on the loan she used to purchase Bringger's book of business.

¶ 12    The second amended complaint contains a single count for breach of contract, which alleges that Allstate "materially breached the EA Agreement" by failing to approve the transfer to Mary's husband and that "Allstate also materially breached the covenant of good faith and fair dealing implied in the EA Agreement." Specifically, Mary pleads that "Allstate, the party vested with discretion, owed [Mary] a duty to act in good faith in deciding whether to approve the sale of her economic interest in her business, and her book of business, to Buddy Slay, and to make its decision in a reasonable manner, and not in a manner that was arbitrary, capricious, or otherwise inconsistent with the parties' reasonable expectations."

¶ 13    The second amended complaint pleads that Buddy "ran a successful independent Allstate" agency and "was qualified to acquire [Mary's] economic interest in her agency and service the policyholders in her book of business." However, Allstate "refused to approve the sale of [Mary's] business to Buddy Slay solely for the benefit of Faye McKnight, whose agency competed with Buddy Slay's agency." Mary alleges that, by "refusing to approve [Mary's] transfer request for this arbitrary and capricious reason, Allstate breached the covenant of good faith and fair dealing" and caused Mary "substantial damages, including lost wages and economic injury."

¶ 14    On August 29, 2017, Allstate filed a motion to dismiss the second amended complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2016)). The motion attached an affidavit of Mark Canfield, who is a "Territorial Sales Leader" for Allstate in Florida. Canfield's affidavit attached a copy of the EA Manual, as well as a copy of the notice of termination sent to Mary. Canfield's affidavit further attested that Mary "was compensated with a 'termination payment' as outlined in the EA Manual."

¶ 15    The motion argued that the EA Agreement granted "Allstate absolute discretion to approve or disapprove of a proposed buyer." Allstate argued that its denial of Mary's proposed transfer of her economic interest to her husband was "an exercise of Allstate's contractual discretion, and therefore was not a breach of contract." The motion further argued that, since there was no contractual provision "limit[ing] how Allstate can assign policies from [Mary's] former book of business after her termination," the subsequent transfer to Faye did not breach the EA Agreement.

¶ 16    Allstate also argued that Mary's claim for breach of the implied covenant of good faith relied on legal conclusions and "unsupported conclusions of fact." Allstate argued that the second amended complaint did not "provide any facts in support of [Mary's] allegation that Allstate refused [Mary]'s proposed buyer with the sole intention of benefitting Faye McKnight" and "does not allege that she proposed any other buyer that Allstate refused."

¶ 17    Mary's response to the motion to dismiss argued that dismissal was improper under section 2-619 of the Code, as Allstate had not identified an "affirmative matter" to defeat her claim. Mary otherwise argued that the second amended complaint adequately pleaded facts supporting a breach of the implied duty of good faith.

¶ 18    On December 13, 2017, the court held a hearing on the motion to dismiss the second amended complaint. Mary's counsel first argued, as a procedural matter, that Allstate's motion should have been brought under section 2-615 of the Code (735 ILCS 5/2-615 (West 2016)), rather than section 2-619. Mary's counsel acknowledged that the EA Agreement gave Allstate discretion in approving a transfer but argued that this did not preclude a claim for breach of the implied duty of good faith and fair dealing. Mary's counsel argued that the second amended complaint pleaded that Allstate exercised its discretion in an arbitrary or capricious manner or otherwise "not consistent with the parties' reasonable expectations." Specifically, Mary's counsel argued that since Buddy, an experienced Allstate agent, had already been found by Allstate as "qualified" to sell its polices, it was "within the reasonable expectation of the parties" that Allstate would approve the transfer to him, such that Allstate abused its discretion when it disapproved the transfer. Mary's counsel urged that, at the pleading stage, "these facts are sufficient when construed in favor of the plaintiff to show that there could have been a violation of the covenant of good faith and fair dealing."

¶ 19    In issuing its ruling, the trial court remarked that it was "inclined to agree" with Mary's counsel that the motion to dismiss was "more appropriate as a [section] 2-615," yet the court would grant the motion under both section 2-615 and 2-619 of the Code. The trial court also noted that "the duty of good faith and fair dealing applies because of th[e] discretionary aspect" of the EA Agreement. Nevertheless, the court rejected the proposition that a breach of the duty of good faith and fair dealing could be alleged based on Mary's "reasonable expectation that a previously approved seller of Allstate's polices would automatically be approved under this contractual provision." The court found that the allegations of the second amended complaint "still haven't adequately pled the breach of covenant of good faith and fair dealing, and I don't think they could, given the wording of the contractual provision."

¶ 20    On December 13, 2017, the trial court entered an order granting Allstate's motion to dismiss "pursuant to section 2-615 & 2-619" and dismissing the second amended complaint with prejudice. On January 12, 2018, Mary filed a timely notice of appeal from the December 13, 2017, dismissal order. Accordingly, this court has jurisdiction. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 21                                    ANALYSIS

¶ 22    On appeal, Mary argues that the second amended complaint was not subject to dismissal under either section 2-615 or 2-619 of the Code. First, she claims that dismissal was improper under section 2-615 because the second amended complaint sufficiently pleaded a claim for breach of contract, premised on the implied covenant of good faith and fair dealing. Mary recognizes that the EA Agreement afforded Allstate "broad discretion," but she argues that she sufficiently pleaded that Allstate "exercised that discretion in bad faith" or otherwise in a manner inconsistent with her reasonable expectations. Mary asserts that Allstate denied the transfer to her husband "for an arbitrary and capricious reason: to benefit [Ray's] wife," when her husband, who had been a successful independent Allstate agent, was "the most qualified person to purchase [her] book of business." Mary claims that she pleaded facts from which a reasonable inference can be drawn that Allstate lacked good cause to prohibit her from selling her book of business to her husband. She urges that her complaint sufficiently pleads that Allstate denied her proposed transfer to her husband for "opportunistic, arbitrary, and capricious reasons" in breach of the duty of good faith. Mary contends that dismissal premised upon section 2-615 dismissal was improper, as she is entitled to conduct discovery to explore the facts surrounding Allstate's decision to disapprove the proposed transfer to her spouse.

¶ 23    Mary additionally argues that the court erred in finding dismissal warranted by section 2-619 of the Code. In that regard, she contends that Allstate's motion did not set forth any "affirmative matter" that would defeat her cause of action but merely challenged the legal sufficiency of the second amended complaint.

¶ 24    Allstate's appellate brief argues that dismissal was proper under either section 2-615 or 2-619 of the Code. Allstate claims that dismissal under section 2-615 was proper because Mary could not state a claim for breach of contract, as the EA Agreement granted Allstate unlimited discretion to approve or disapprove a transfer of her economic interest in her book of business. Specifically, Allstate relies on the EA Agreement's language that Allstate "retains the right in its exclusive judgment to approve or disapprove such a transfer." Allstate also cites the EA Manual's language that Allstate "shall have the right to approve or

disapprove the sale of the economic interest in the book at any time up until the time the transfer of the economic interest has occurred." Furthermore, Allstate emphasizes the EA Manual's statement that "The Company [(Allstate)] will not approve the transfer of any shares or interests in the agency" to enumerated categories of transferees, one of which is "Any person who is acting as an agent or broker of another insurance company, including any Allstate Independent Agent."[3] Allstate contends that these provisions regarding its broad discretion precluded Mary from having any reasonable expectation that Allstate would approve her proposed transfer to Buddy.

¶ 25    Allstate further argues that the second amended complaint consists of "legal conclusions and unsupported conclusions of fact" but lacks "concrete facts" supporting Mary's claim that Allstate acted in order to benefit Faye. Allstate's briefing and oral argument also suggest that Allstate's eventual transfer of Mary's book of business to Faye is irrelevant because Allstate maintained unlimited discretion to disapprove Mary's proposed transfer to Buddy. Allstate argues that even if it acted with the intent to benefit Faye, Mary's claim "would still fail" because the EA Manual put her on notice that Allstate would not approve a transfer to an "independent" Allstate agent, including her husband.

¶ 26    Allstate additionally argues that dismissal was proper under section 2-619 of the Code, because its supporting affidavit provided an "affirmative matter" that negated Mary's allegations and "directly refute[d]" her claim that Allstate "acted arbitrarily, capriciously, or with improper motive." Specifically, Allstate contends that the EA Manual contradicts Mary's claim of bad faith, as it provided that Allstate "will not approve the transfer" to "an Allstate Independent Agent." Allstate otherwise claims that Mary's allegation of harm is negated by the facts that (1) the EA Manual provides that agents are entitled to a "termination payment" if they "decline or are unable to sell" their book of business and (2) Mary received a termination payment as compensation and thus cannot maintain a breach of contract claim. Allstate also suggests that the notice of termination sent to Mary constitutes an "affirmative matter" defeating her claim, as the notice informed her of her right to either sell to an approved buyer or receive a termination payment. Thus, Allstate argues that dismissal under section 2-619 was warranted, as the affidavit and exhibits thereto establish that Allstate complied with the EA Agreement.

¶ 27    Mary's reply argues that Allstate cannot rely on the language in the EA Manual stating that Allstate will not approve a transfer to "Any person who is acting as an agent or broker for another insurance company, including an Allstate Independent Agent." Mary emphasizes that this language is followed by a "Note" stating: "In instances where the proposed transferee is a spouse or other family member of the *** Agent, the Company will consider making an exception to the above limitations based on the facts and circumstances presented." Based on that additional note, Mary argues that Allstate retained discretion to approve a transfer to her husband and thus retained the duty to exercise that discretion in good faith.

---

[3]Notably, Allstate did not cite this language from the EA Manual in its argument to the trial court. Mary's reply asserts that, as a result, Allstate cannot rely on this provision on appeal. We disagree, since "[o]n appeal, a reviewing court may affirm the trial court's ruling for any reasons supported by the record regardless of the basis relied upon by the trial court." *Pekin Insurance Co. v. AAA-1 Masonry & Tuckpointing, Inc.*, 2017 IL App (1st) 160200, ¶ 21.

- 6 -

¶ 28    We first note, as a procedural matter, that although Allstate's motion to dismiss was captioned as a motion under section 2-619, the trial court correctly construed it as additionally seeking dismissal under section 2-615, because the motion argued that the second amended complaint's allegations were legally insufficient. See *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 17 (explaining that "[a] section 2-615 motion to dismiss attacks the legal sufficiency of the complaint" whereas a section 2-619 motion "does not attack the legal sufficiency of the claim but rather attacks the complaint by raising defenses or other affirmative matters *** which would defeat the plaintiff's claims"). Absent prejudice to the nonmoving party, a reviewing court may treat an improperly labeled motion as if it were properly filed under section 2-615. *Vicars-Duncan v. Tactikos*, 2014 IL App (4th) 131064, ¶ 18. Mary does not suggest that she was prejudiced by Allstate's failure to specify that its motion sought dismissal under section 2-615. Thus, we will review whether the second amended complaint was properly dismissed, under either section 2-615 or section 2-619. "We review dismissals under either statute *de novo*, drawing all reasonable inferences in favor of the nonmovant." *Lake Point Tower Condominium Ass'n v. Waller*, 2017 IL App (1st) 162072, ¶ 11.

¶ 29    We first discuss whether dismissal was proper pursuant to section 2-615 of the Code. A section 2-615 motion to dismiss "tests the legal sufficiency of the complaint based on defects apparent on its face." *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25. "A section 2-615(a) motion presents the question of whether the facts alleged in the complaint, viewed in the light most favorable to the plaintiff, and taking all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true, are sufficient to state a cause of action upon which relief may be granted. [Citations.] [A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. [Citations.]" *Id.*

¶ 30    We also note that the EA Agreement, as an exhibit to the second amended complaint, is considered part of the complaint for purposes of reviewing the sufficiency of the pleading. See *Gagnon*, 2012 IL App (1st) 120645, ¶ 18 ("An exhibit attached to the complaint becomes part of the pleading for every purpose, including the decision on a motion to dismiss."). On the other hand, the EA Manual—which was not attached to the second amended complaint—does not factor into our review of the sufficiency of the pleadings for purposes of section 2-615.

¶ 31    We thus review whether the allegations of the second amended complaint stated a claim for breach of the EA Agreement, arising from a breach of the implied covenant of good faith and fair dealing. "In order to state a cause of action for breach of contract, a plaintiff must plead: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) a breach of the subject contract by the defendant; and (4) that the defendant's breach resulted in damages." *McCleary v. Wells Fargo Securities, L.L.C.*, 2015 IL App (1st) 141287, ¶ 19.

¶ 32    Our court in *McCleary* explained the implied duty of good faith as follows:

"Every contract contains an implied covenant of good faith and fair dealing. [Citation.] The purpose of this duty 'is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.' [Citation.] Disputes involving the exercise of good faith arise

when one party is given broad discretion in performing its obligations under the contract. [Citation.] 'In order to plead a breach of the covenant of good faith and fair dealing, a plaintiff must plead [the] existence of contractual discretion.' [Citation.] 'Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised "reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." ' " *Id.*

¶ 33    "A plaintiff sustains a cause of action for breach of contract for abuse of discretion based on a violation of the implied covenant of good faith and fair dealing by alleging that defendant 'exercised its discretion in a manner contrary to the reasonable expectations of the parties.' " *Id.* ¶ 21 (quoting *Wilson v. Career Education Corp.*, 729 F.3d 665, 675 (7th Cir. 2013)). Thus, in *McCleary*, we found that the plaintiff had stated a claim for breach of the implied covenant of good faith and fair dealing, based on his employer's failure to give him a bonus after he met relevant bonus criteria. See *id.* ¶ 26 ("Where a plaintiff has pled that he had a reasonable expectation to a bonus from a defendant that abused its broad contractual discretion by arbitrarily withholding the bonus in a manner not reasonably anticipated by the parties at the time of contract formation, a valid cause of action has been sufficiently pled to withstand a section 2-615 motion to dismiss.").

¶ 34    We conclude, drawing reasonable inferences from her pleading in Mary's favor, that dismissal was not warranted under section 2-615. That is, the second amended complaint alleged facts sufficient to plead that Allstate abused its contractual discretion when it denied the proposed transfer to Mary's husband, in breach of its implied duty to exercise its discretion in good faith. The pleading alleged a contract, the EA Agreement, that afforded Allstate discretion in whether to approve a sale to Mary's proposed transferee. As Allstate acknowledged in its briefing and on oral argument, Allstate was bound by the implied duty to exercise its discretion in good faith. In turn, Mary had a reasonable expectation that Allstate would not deny the sale to her proposed transferee, her husband Buddy, for a bad-faith, arbitrary, or capricious reason. Further, Mary alleges specific facts supporting a reasonable inference that Buddy was qualified to be the transferee, as he allegedly served as a successful independent Allstate insurance agent for several years. Mary alleges that the transfer to Buddy, an otherwise qualified candidate, was disapproved for an arbitrary or capricious reason—that is, Allstate refused to approve the transfer to Buddy "solely for the benefit of Faye McKnight," the spouse of Mary's manager, whose agency was in competition with Buddy's agency.

¶ 35    We reiterate that, at this stage, Mary only needs to *plead* facts supporting reasonable inferences. The second amended complaint pleads facts sufficient to allege a bad-faith reason for Allstate's conduct. The parties may explore, in subsequent discovery, whether there is any factual evidence supporting or refuting Allstate's alleged improper motive. That is, we are not deciding whether, *in fact*, Allstate was motivated by bad faith or some other reason. The parties may explore such factual issues in discovery, upon motions for summary judgment, or at an eventual trial.

¶ 36    We recognize that our court reached a different result in *Barille v. Sears Roebuck & Co.*, 289 Ill. App. 3d 171 (1997), which is heavily relied upon by Allstate and was relied upon by

the trial court. Although that case also discussed a breach of contract claim against Allstate by a former agent, we find *Barille* distinguishable.

¶ 37 The plaintiff in *Barille* signed an "agent employment agreement *** with Allstate and became an Allstate insurance agent." *Id.* at 173. The plaintiff subsequently sold Allstate insurance policies through Allstate's "Neighborhood Office Agent" (NOA) program. *Id.* However, the plaintiff "incurred financial losses and eventually terminated her relationship with Allstate." *Id.* The *Barille* plaintiff filed a complaint against Allstate, including counts for breach of contract and other claims, which was dismissed under section 2-615 of the Code. *Id.* at 174.

¶ 38 With respect to the breach of contract claim, the *Barille* plaintiff argued on appeal that she sufficiently pleaded that Allstate had

> "a duty of good faith and fair dealing, which require[d] Allstate to act reasonably and with proper motive when exercising its discretion; and that Allstate abused its discretion by unreasonably increasing her costs of doing business, thereby causing her to go out of business and then retaining her book of business." *Id.*

Our court recognized that the duty of good faith and fair dealing "requires the party vested with discretion under the contract to exercise that discretion reasonably and with proper motive" and not "arbitrarily, capriciously or in a manner inconsistent with the reasonable expectations of the parties." (Internal quotation marks omitted.) *Id.* at 175.

¶ 39 However, our court upheld the dismissal, reasoning that:

> "[T]he actions complained of by Barille *** were exercised within the discretion granted Allstate pursuant to the contract. The terms of the contract clearly and unambiguously notified Barille that Allstate reserved the right to make any changes in the terms and conditions of her employment as Allstate deemed necessary and appropriate in furtherance of its business objectives subject to the terms and conditions of the contract.
>
> The contract also stated that the compensation rules and amounts set forth in Barille's employment manual may be amended from time to time and that, due to the inherent uncertainty of business conditions, Allstate reserved the right to increase or decrease any compensation amounts and change the compensation rules at any time ***." *Id.*

¶ 40 We further stated that, as "Barille does not allege that she did not understand the explicit terms of the parties' contract," her "execution of the contract negates any inference that Allstate's actions were unreasonable and exercised without proper motive so as to constitute a breach of contract." *Id.* at 175-76.

¶ 41 We recognize that the contract in *Barille*, as in this case, afforded Allstate a large degree of contractual discretion. We also recognize that "[p]arties are entitled to enforce the terms of negotiated contracts to the letter without being mulcted[4] for lack of good faith." (Internal quotation marks omitted.) *Id.* at 176.

---

[4]"Mulct" means "to punish by a fine" or to defraud. See Merriam-Webster Online Dictionary, www.merriam-webster.com/dictionary/mulct (last visited Nov. 2, 2018) [https://perma.cc/74CF-58V9].

¶ 42    Nevertheless, we find that *Barille* is distinguishable, as the plaintiff in that case did not make *specific factual allegations* supporting an inference of bad faith or improper motive by Allstate in exercising its contractual discretion. The plaintiff in *Barille* pleaded generally that Allstate "abused its discretion by unreasonably increasing her costs of doing business" (*id.* at 174), yet did not plead specific, concrete facts suggesting any improper, arbitrary, or capricious motivation for Allstate's actions. That is, no factual circumstances were alleged in *Barille* to suggest that Allstate implemented any changes affecting the plaintiff's agency in bad faith, rather than reasonably exercising its discretion to adjust to the "inherent uncertainty of business conditions," as disclosed in the contract. *Id.* at 175.

¶ 43    In contrast, we believe that Mary's second amended complaint has pleaded facts that sufficiently allege an improper motive, amounting to an abuse of Allstate's contractual discretion, in violation of its implied duty of good faith and fair dealing. Mary pleads that Allstate denied her proposed transfer to Buddy not for any legitimate business reason but *solely* in order to benefit Ray, her former manager, by transferring Mary's former book of business to his spouse. Mary offers specific factual allegations that support an inference of improper motive. Specifically, she pleads that her husband, Buddy, successfully operated as an Allstate independent insurance agent for a number of years. These allegations support a reasonable inference that, since Buddy was previously found to be qualified to sell Allstate policies, he would be qualified to manage Mary's book of business. In turn, this inference supports Mary's reasonable expectation that her proposed transfer to Buddy would be approved by Allstate.[5] Further, the second amended complaint alleges a specific, bad faith reason for Allstate's denial of the proposed transfer. That is, Mary alleges that the transfer to her spouse was denied, solely in order to facilitate the subsequent transfer of her former book of business to Faye, the spouse of Mary's former supervisor, who directly competed with Mary's husband's agency. Although Allstate contends that the subsequent transfer is irrelevant in light of its contractual discretion to deny Mary's requested transfer to Buddy, we find that, at the pleading stage, this allegation supports a reasonable inference in Mary's favor as to Allstate's improper motive. We find that the second amended complaint sufficiently alleges that Allstate exercised its contractual discretion in a manner that was arbitrary, capricious, or contrary to the reasonable expectations of the parties. Thus, it states a claim for breach of the implied duty of good faith and fair dealing. Accordingly, we conclude that the trial court erred in dismissing the second amended complaint under section 2-615 of the Code.

¶ 44    We turn to the trial court's separate determination that dismissal was also warranted under section 2-619 of the Code. 735 ILCS 5/2-619(a)(9) (West 2014) (permitting defendant to seek dismissal on the ground "[t]hat the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim"). A motion to dismiss under this provision "admits the legal sufficiency of the complaint, admits all well-pleaded facts and all reasonable inferences therefrom, and asserts an affirmative matter outside the complaint bars or defeats the cause of action." *Reynolds*, 2013 IL App (4th) 120139, ¶ 31. "An affirmative matter *** is something in the nature of a defense that negates the cause of

---

[5]We note that, as the EA Manual was not part of the complaint, for purposes of reviewing dismissal under section 2-615 of the Code, we need not consider the EA Manual's language stating that Allstate would not approve a transfer to an "independent" Allstate agent, such as Mary's husband.

action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. [Citation.]" (Internal quotation marks omitted.) *Dewan v. Ford Motor Co.*, 363 Ill. App. 3d 365, 368 (2005).

¶ 45    "When ruling on the section 2-619(a)(9) motion, the court construes the pleadings 'in the light most favorable to the nonmoving party' [citation] and should only grant the motion 'if the plaintiff can prove no set of facts that would support a cause of action' [citation]." *Reynolds*, 2013 IL App (4th) 120139, ¶ 31. "The reviewing court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff." *Dewan*, 363 Ill. App. 3d at 368. A dismissal under section 2-619 is reviewed *de novo. Id.*

¶ 46    Allstate contends that the documents attached to its supporting affidavit, including the EA Manual, "directly refute" the claim that Allstate "acted arbitrarily, capriciously, or with improper motive," justifying dismissal under section 2-619. We reject Allstate's contentions.

¶ 47    First, Allstate relies on the language in the EA Manual that "the Company will not approve the transfer of any shares or interest in the agency" to "[a]ny person who is acting as an agent or broker for another insurance company, including an Allstate Independent Agent." As Allstate points out, the second amended complaint alleges that Buddy was an *independent* Allstate agent. Thus, initially, Allstate's reliance on this language of the EA Manual appears to be in its favor. However, as Mary's reply brief points out, directly after the language relied on by Allstate, the EA Manual adds a "Note" stating: "In instances where the proposed transferee *is a spouse* *** the Company [Allstate] will consider making an exception to the above limitations based on the facts and circumstances presented." Allstate fails to address this language anywhere in its brief. At oral argument, Allstate argued that the "Note" simply recognized the *possibility* that Allstate would permit a transfer to a spouse but that it did not create any reasonable expectation that such a transfer would be approved. Allstate essentially argues that the "Note" is superfluous in light of the other contractual provisions setting forth its unlimited discretion. This argument, taken to its logical conclusion, suggests that Allstate is absolved of responsibility to act in good faith. During oral argument, Allstate suggested that Mary could not have had a reasonable expectation that she could transfer her book of business to her spouse.

¶ 48    We disagree with Allstate and find that this "Note" is significant, as it expressly qualifies the previous language that Allstate "will not approve" certain categories of transferees. Keeping in mind that we are to draw reasonable inferences in favor of the plaintiff (*id.*), the "Note" indicates that where, as in this case, the proposed transferee is a *spouse* of the agent, Allstate will use its discretion in good faith and deal fairly "based on the facts and circumstances presented" to "consider making an exception" to the previously expressed limitations. The "Note" expressly indicated that Allstate retained discretion to approve a transfer to a spouse who was an independent agent, such as Mary's husband. In light of this "Note," we cannot say that the other EA Manual language relied on by Allstate is an affirmative matter that negates Mary's claim.

¶ 49    We also reject Allstate's argument that Mary's allegation that she was "harmed by Allstate's conduct" is negated by (1) the EA Manual's provision that she would receive a "termination payment" if she was unable to sell her economic interest in her book of business or (2) the fact that she accepted a termination payment. Although it is not disputed that she received a termination payment, this does not negate her claim that she was harmed by Allstate's denial of her proposed sale of her economic interest. The second amended

complaint expressly pleads that, although she received a $40,000 termination payment, this amount "was far less than the value of Plaintiff's economic interest in her agency."

¶ 50    Finally, we reject Allstate's claim that the notice of termination was an affirmative matter defeating Mary's claim. Allstate emphasizes that the notice of termination explained that Mary could sell only to an "approved buyer," that "Allstate has the absolute right of approval of the buyer," and that "[i]f [Mary] does not present a buyer or the buyer [Mary] presents is not approved, [Allstate] will process [a] termination payment." Through this language, the notice of termination simply reiterated Allstate's contractual discretion, as already set forth elsewhere in the EA Agreement and EA Manual. However, that language does not refute Mary's claim that Allstate *abused* its contractual discretion and acted in bad faith when it disapproved her proposed transfer to her husband for an arbitrary or capricious reason.

¶ 51    In short, we do not find that the materials attached to Allstate's affidavit constitute an "affirmative matter" that negates Mary's cause of action or refutes conclusions of law or conclusions of material fact from the second amended complaint. Thus, we find that the second amended complaint was not subject to dismissal under section 2-619 of the Code.

¶ 52    For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand the matter for further proceedings consistent with this opinion.

¶ 53    Reversed and remanded.