2020 IL App (1st) 191072

FIRST DISTRICT
SIXTH DIVISION
August 14, 2020

No. 1-19-1072

| | | |
|---|---|---|
| FEIS EQUITIES, LLC, an Illinois Corporation, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 18 L 3568 |
| SOMPO INTERNATIONAL HOLDINGS, LTD., a | ) | |
| Bermuda Corporation, f/k/a Endurance Specialty | ) | |
| Holdings, Ltd., and SOMPO HOLDINGS, INC., a | ) | |
| Japanese Corporation, | ) | Honorable |
| | ) | Daniel J. Kubasiak, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal concerns a securities fraud action by plaintiff Feis Equities, LLC, against

defendants Sompo International Holdings, Ltd. (International) and Sompo Holdings, Inc.

(Holdings). Defendants filed motions to dismiss that the trial court granted, ultimately with

prejudice. On appeal, plaintiff contends that the dismissal with prejudice of its complaint as

amended was erroneous because each count properly alleged claims upon which relief could be

granted. For the reasons stated below, we affirm.

¶ 2                    I. JURISDICTION

¶ 3    On September 7, 2018, and January 10, 2019, the circuit court dismissed all counts of the initial and amended complaint, respectively, with leave to file an amended complaint. On May 3, 2019, the court dismissed the second amended complaint with prejudice. Plaintiff timely filed its notice of appeal on May 23, 2019. Accordingly, this court has jurisdiction over this matter pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017).

¶ 4                    II. BACKGROUND

¶ 5    Plaintiff filed its initial complaint in April 2018, its amended complaint in September 2018, and its second amended complaint in February 2019. In all, plaintiff alleged that International, a "wholly-owned indirect subsidiary" of Holdings, acquired in September 2017 "substantially" all the assets and liabilities of Endurance Specialty Holdings, Ltd. (Endurance), another subsidiary of Holdings. Endurance common shares were traded publicly until the merger of Endurance and Holdings on March 28, 2017, while Endurance preferred shares were traded until October 20, 2017. Plaintiff is an arbitrage firm that owned Endurance preferred shares in 2017.

¶ 6    Plaintiff alleged that Endurance filed with the Securities and Exchange Commission (SEC) on March 28, 2017, a document announcing its merger with Holdings, with the transaction described repeatedly as a merger and never as a liquidation and with Holdings stating in its prospectus and Certificate of Designations (Certificate or Certification) that it "would pay a full merger redemption price of $26 per preferred share plus accrued dividends." Under the prospectus and the November 2015 Certificate, "a merger could not be considered a liquidation." However, on October 6, 2017, Endurance announced in another SEC filing that its preferred shares would be redeemed at a liquidation price of $25 per share plus accrued dividends, which plaintiff

characterized as "a flat-out contradiction of its earlier filings" that it would pay a merger price of $26 per preferred share plus dividends. Plaintiff relied upon the October 2017 filing and sold 52,124 preferred shares of Endurance "for a price well below the $26 merger price" so that it held no shares by October 11, 2017. On November 6, 2017, Endurance announced that it would pay an additional "Final Payment" of $1 per preferred share, but plaintiff did not own any shares by then.

¶ 7    Plaintiff alleged that "highly suspicious market activity occurred after the announcement of the redemption price of $25.167 from which it may be inferred that certain shareholders knew or expected additional payment would be made." Plaintiff would not have sold its Endurance preferred shares in October if it knew that Endurance would pay an additional $1 per share in November. Plaintiff alleged that defendants committed fraud by misrepresenting that shareholders would receive $25 per share plus dividends and by failing to disclose that some shareholders would later receive an additional $1 per share. Plaintiff incurred a loss of over $51,000, including commissions, interest, and "$26,000 which was improperly debited from Plaintiff's account on November 7, 2017, in connection with the shares it had sold short."

¶ 8    In all iterations, count I alleged that International violated section 12(F) of the Illinois Securities Law of 1953 (Law or Securities Law) (815 ILCS 5/12 (West 2018)), prohibiting engaging in a transaction or course of business connected to the sale or purchase of securities "which works or tends to work a fraud or deceit upon the purchaser or seller"; count II alleged that International violated section 12(I) of the Law, prohibiting a scheme to defraud in connection with the sale or purchase of securities; count III alleged that International violated the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2018)), prohibiting deceptive acts in trade or commerce with the intent that the deception be relied upon and that cause actual damage; and count IV alleged common-law fraud by International.

¶ 9                              A. Initial Complaint & Dismissal

¶ 10    In the April 2018 initial complaint, plaintiff summarized its central allegation thus:

"Defendants, sophisticated, public companies, represented by a major law firm, engaged

in a stock redemption that was at best confusing and at worst deceptive. The Plaintiff, with

extensive experience in stock redemptions, relies on accurate public filings in making its

trading decisions. However, because Defendants failed to accurately describe how it would

effect the stock redemption, plaintiff made trading decisions which caused it to suffer

losses of at least 50k."

Count V of the April 2018 initial complaint alleged that both defendants committed conspiracy,

specifically that they executed the scheme to defraud by engaging in a conspiracy to draft, file,

and disseminate the "knowingly false and fraudulent" documents referred to above. Count VI

alleged breach of contract by both defendants for offering or promising a full redemption price of

$25 plus dividends, plaintiff accepting that offer or promise and selling shares for $25.167 in

reliance thereon, and defendants breaching the resulting contract by paying an additional $1 per

share to those what had not sold their shares. No documents were attached to the initial complaint.

¶ 11    In June 2018, defendants filed their appearance and their motion to dismiss the complaint

pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615,

2-619 (West 2018)). They argued that plaintiff was a sophisticated trader that "made a trading

decision in October 2017 that it later came to regret" when it sold Endurance shares, and also sold

"short" Endurance shares it did not have, "rather than tender them in a liquidation a few weeks

later" when plaintiff would have received the additional $1 per share. They argued that plaintiff's

claims were conclusory and contradicted by the documents referred to in the complaint, noting

that plaintiff failed to attach those documents to the complaint.

¶ 12    Defendants stated that, on November 17, 2015, Endurance issued a prospectus stating that it would offer preferred shares with a liquidation preference of $25 per share and providing that "[u]pon any voluntary or involuntary liquidation, dissolution or winding-up of Endurance," preferred shareholders would receive "a liquidating distribution" of $25 per share plus any declared but unpaid dividends. On November 24, 2015, Endurance issued the preferred shares pursuant to the Certification, which described the liquidation rights of preferred shareholders "substantively" identically to the prospectus. On March 28, 2017, Holdings acquired Endurance pursuant to a merger agreement of October 5, 2016, with Endurance surviving the merger "as an indirect, wholly-owned subsidiary of Holdings." "On September 27, 2017, Endurance and International, an indirect, wholly-owned subsidiary of Holdings, entered into a Stock and Asset Purchase and Sale Agreement (the 'Agreement') pursuant to which Endurance transferred substantially all of its assets and liabilities to International." The related SEC filing "stated that after the execution of the Agreement, Endurance planned to commence a voluntary liquidation and to pay out the required liquidation preference on the" preferred shares. On October 6, 2017, Endurance "announced that it would be distributing the liquidation preference of" $25 per share plus dividends. Endurance preferred shares traded publicly until October 20, 2017. On November 6, 2017, Endurance "announced that it would be making an additional payment of *** $1 per" preferred share for all such shares outstanding on October 23, 2017. Defendants attached to their motion the documents referenced in the complaint and the motion to dismiss.

¶ 13    Defendants argued that plaintiff "chose to sell its shares, and short sold others, at $25 per share in between the October 6th announcement of the $25 liquidation and the November 6th announcement of additional consideration, and thus missed out on the $1 additional liquidation amount." While the crux of the complaint was "that Defendants somehow worked a fraud by

making an additional payment to" preferred shareholders, "Endurance continued to liquidate and get its affairs in order, after Endurance's contractual obligations to those shareholders had allegedly already been fulfilled." Thus, the documents that the complaint relied upon, but did not include, directly refuted the conclusory allegations of the complaint. Defendants argued:

"Plaintiff fails to acknowledge *** what is clear from the plain language in the relevant public filings *** there were two separate transactions involving Holdings, International, and Endurance in 2017: first the Merger between Holdings and a subsidiary of Endurance, which Endurance survived as a subsidiary of Holdings, and six months later a stock and asset purchase between International and Endurance, after which Endurance was liquidated."

Thus, defendants' "statements were accurate when made and demonstrate that they fulfilled their obligations to [preferred shareholders] at each step of each transaction."

¶ 14     Defendants argued that Endurance had the option, but not the obligation, to redeem the preferred shares at the time of the merger, and then did not exercise that option. "When Endurance voluntarily liquidated after entering into the Agreement with International, six months after the Merger, the terms of the Certificate make clear that the" preferred shareholders "were entitled to receive $25 per depository share plus certain dividends if any." The facts pleaded in the complaint showed that defendants fulfilled that obligation. "Plaintiff does not, and indeed cannot, plead that Endurance ever stated that, in the event of a liquidation, it would only pay [preferred shareholders] $25 plus dividends and not a penny more." Defendants noted that the complaint referred to "payment in full" but the documents issued by defendants never used that phrase. Under the various documents, the "liquidation preference represented a floor, not a ceiling, as to what Endurance could pay to the shareholders." In other words, the documents accurately described a

merger as a merger and a liquidation as a liquidation, and "no public statement foreclosed the possibility of additional payments." Defendants asserted:

> "What Plaintiff does not allege—and cannot—is that Defendants knew on October 6th that they would make an additional payment a month later. Without this allegation, which Plaintiff cannot make because it is false, this is nothing more than a case of fraud by hindsight, where Plaintiff insists that a prior public statement must have been false or misleading when made solely because the company later issued another statement with additional information."

While plaintiff alleged that only some preferred shareholders received the additional $1 per share, all holders of such shares on October 23, 2017, received that payment. Plaintiff made only a vague and conclusory allegation of suspicious market activity and alleged in a conclusory manner that defendants intended to induce reliance on their allegedly false statements. Defendants argued that "no conceivable motive can be inferred to Defendants for announcing the additional payment at a later date, other than a subsequent business decision to provide additional compensation to the holders of the [preferred shares] in connection with the liquidation" because they "paid out the same amount of money to shareholders regardless of who held the shares." Defendants contended that the conspiracy count merely recited the elements of conspiracy and the breach of contract count should be dismissed because plaintiff failed to show how defendants breached any contract with plaintiff.

¶ 15    Plaintiff responded to the motion to dismiss, arguing that the motion relied upon the truth of various statements and disclosures by defendants, while the crux of the complaint was

> "what Defendants did *not* disclose: that after publicly declaring a liquidation dividend of $25 [plus dividends], they turned around four (4) weeks later, *without* any public disclosure

*after* Plaintiff sold its shares and declared a retroactive additional payment of $1 per share to those lucky enough to still be shareholders on October 23, 2017, Plaintiff was not so lucky. Had it known there would be an additional payment. Plaintiff would not have sold any shares." (Emphases in original.)

Defendants' public filings initially characterized the transaction between Holdings and Endurance as a merger, triggering a $26 redemption price, then called the transaction a liquidation, triggering a $25 redemption price, while defendants also stated that a merger could not be deemed a liquidation. Plaintiff claimed that

"[d]efendants' reason(s) for making the additional payment—blowback from shareholders, tax consequences, whatever—are as yet unknown. What is known, however, is that between the announcement of the $25 payment on October 6, 2017, and the payment of an additional $1 per share, nearly a million shares were bought at a price above the $25, an entirely irrational trading strategy unless someone knew or had reason to expect the additional payment."

Plaintiff noted its allegations that the March 28, 2017, SEC filing referred repeatedly to a merger and never to a liquidation, that the merger redemption price was $26 per share, that a merger was not a liquidation pursuant to the prospectus and Certificate, and that Endurance announced in October 2017 that it would pay a liquidation redemption price of $25 per share.

¶ 16    Plaintiff argued that section 6(c) of the Certificate, providing "If the Liquidation Preference has been paid in full to all holders of [preferred] shares *** the holders of the other shares of the company shall be entitled to receive all remaining assets of the Company," rendered the $25 per share price "a ceiling not, as Defendants argue, a floor." Thus, plaintiff maintained that "[d]efendants' payment of an additional $1 per share was therefore in direct conflict with its public

filings stating that the payment of $25.167 would be in *'full satisfaction'* of the Defendants' obligations." (Emphasis in plaintiff's response.) Plaintiff asserts that defendants should have "announced the additional payment well in advance so traders like Plaintiff could factor that important and material information into their trading decisions." Plaintiff argued that requiring it to prove defendants' intent to induce reliance at the pleading stage was "premature" and that it was sufficient for plaintiff to allege such intent. Plaintiff further argued that it duly alleged the elements of breach of contract.

¶ 17    Attached to plaintiff's response was the affidavit of Lawrence Feis, plaintiff's director and majority owner, averring in relevant part that (1) in his 38 years of trading experience, this was the only instance of a redemption payment in excess of the announced liquidation price, (2) plaintiff sold its Endurance shares before October 11, 2017, in reliance on defendants' filings, (3) almost one million Endurance shares were purchased between the announcement of the $25.167 per share payment on October 6 and the last day of Endurance share trading on October 20 at a price above $25.167 per share, and (4) Feis would not have sold its Endurance shares after October 6 had he known or had reason to believe that an additional $1 per share would be paid. Feis also opined that, "[u]nless a buyer had inside information or other reason to know or reasonably expect that Endurance would pay an additional $1 per share no rational investor would pay *anything* above the liquidation price of $25.167 to buy Endurance shares." (Emphasis in original.)

¶ 18    Defendants replied in support of their motion to dismiss, arguing that their filings speak for themselves and refute the allegations of the complaint. Pointing to various filings including an SEC filing of March 2, 2017, they argued that

> "Plaintiff selectively quotes from the \*\*\* Certificate, contending that Defendants were
>
> only allowed to pay Series C Preferred Shareholders $25 per share, and not a penny more

unless they wanted to risk committing fraud, because the Certificate states that if the liquidation preference had been paid to Series C Preferred Shareholders and any other preferred shareholders, any holders of other shares would be entitled to receive all remaining assets of the company or proceeds thereof. [Citation to Certificate section 6(c)] What Plaintiff neglects to mention, or perhaps did not realize, is that at the time of the liquidation there *were no other shareholders* in Endurance. All of Endurance's other preferred shares had been redeemed in the years prior, and all ordinary/common shares were cancelled and converted into the right to receive cash upon the Merger with Holdings' indirect subsidiary in March of 2017. [Citation to the March 2017 SEC filing, section 2.01.] In the process of winding up Endurance, Defendants made a business decision, weeks after the $25 payment, to distribute additional funds to the only remaining shareholders in the company at the time the shares stopped trading. This is not fraud and does not run counter to any of Endurance's public statements or filings." (Emphasis in original.)

In response to plaintiff's argument that defendants failed to disclose their intent to pay an additional $1 per preferred share, defendants argued that one cannot disclose something that does not yet exist; in other words, plaintiff pleaded no facts showing that defendants intended on October 6—when they announced the $25.167 distribution—to make an additional distribution later. Defendants noted that plaintiff did not allege the sale of a million shares at a price above $25.167 in its complaint but belatedly in its response to the motion to dismiss. They also offered an explanation: "[C]urrent and prospective shareholders who, unlike Plaintiff, *read* Endurance's public filings likely did anticipate there could be additional payments made as Endurance was liquidating with only one class of shares remaining: the Series C Preferred Shares." (Emphasis in original.)

¶ 19    In September 2018, the trial court dismissed without prejudice all counts of the initial complaint, count I under section 2-619 and counts II through VI under section 2-615.

¶ 20    In dismissing count I, the court noted that defendants interposed in their motion to dismiss that their filings were not false or misleading because (1) Endurance had the option to redeem the preferred shares at the time of the merger but chose not to exercise it and (2) when Endurance voluntarily liquidated, the Certificate made clear that preferred shareholders were entitled to receive $25 per share plus certain dividends, an obligation that was fulfilled, with "nothing suspicious about the fact that subsequent, additional payments were made to shareholders." The court found that plaintiff did "not allege any facts or present any legal authority showing that the defendants breached any obligations or violated any specific law."

¶ 21    Noting that fraud must be pled with specificity, the court found regarding counts II, III, and IV that plaintiff had not alleged defendants' "knowledge or intent in making their alleged misrepresentations and omissions." While plaintiff alleged that defendants fraudulently concealed their intent to pay an additional $1 per share after representing that they would pay only $25.167 per share, it did "not allege any facts that, taken as true, would support the assertion that the defendants knew they would sell the shares at the $26 merger price," nor "specifically allege the defendants' intention in not disclosing that it would later sell the shares at the higher price." Regarding count V on conspiracy, the court found that plaintiff had not alleged that "defendants acted together when filing the allegedly fraudulent SEC filings" but only that Endurance had made the October 6 filing. The court found regarding count VI on breach of contract that plaintiff had not alleged specific facts as to the formation of a contract nor attached to the complaint a copy of any written contract as required by the Code. 735 ILCS 5/2-606 (West 2018).

¶ 22                              B. Amended Complaint and Dismissal

¶ 23    In its September 2018 amended complaint, plaintiff summarized its theory of the case:

"The essence of this case is whether the combination of Endurance and Holdings was a merger or a liquidation. If properly classified as a merger, as Plaintiff contends it should have been, Defendants were obligated to pay $26 per share upon redemption, whenever that occurred. If classified as a liquidation, as Defendants contend, Defendants would have been limited to paying only $25 [plus dividends] per share."

"Defendants tried to get away with intentionally misclassifying the merger as a liquidation so they would not have to pay the additional dollar per share (or for other material, financial considerations). But, after it heard complaints from shareholders, it paid the additional dollar to shareholders of record as of October 23, 2017, but not to Plaintiff who had already sold his shares."

Plaintiff alleged that it was "a fair, reasonable and compelling inference that the misclassification was intentional for one or more reasons," including that defendants knew the difference between a merger and liquidation, their filings described the transaction between Endurance and Holdings as a merger, the Certificate provided that a merger would not be deemed a liquidation, and Endurance first announced that it would pay the $25 liquidation price in full satisfaction of its obligation to preferred shareholders but then paid an additional $1 per share to preferred shareholders as of October 23, 2017.

¶ 24    Plaintiff attached Endurance's Certificate and its SEC filings for September and October of 2017 to the amended complaint in support of its narrative of events. No other document such as an affidavit was attached. Plaintiff alleged that the price of Endurance preferred shares fell between October 8 and October 20, 2017, but still traded at $25.30, above the $25.167 liquidation price, "contrary to normal trading practice." After preferred shareholders received the $25.167 per share

payment, "investors began to complain," according to a named officer of defendant Holdings. Plaintiff alleged that an Endurance SEC filing of November 13, 2017, just before the announcement of the additional $1 per share, stated that there was one owner of nonpreferred Endurance shares.

¶ 25    Regarding its damages, plaintiff noted that short sellers, who borrow shares rather than selling shares they already own, are responsible for paying dividends and liquidation payments to the lender of the borrowed shares. Plaintiff alleged that its short sale of Endurance preferred shares resulted in plaintiff having to pay the additional dollar per share itself and in incurring an "improper" deduction of $26,717 from plaintiff's account with the Depository Trust Corporation.

¶ 26    Defendants filed a motion to dismiss the amended complaint under section 2-615 in October 2018. They argued that the amended complaint did not address the insufficiencies of the initial complaint. While plaintiff alleged that defendants intentionally mischaracterized a merger as a liquidation, defendants contended that they

> "did not describe a merger as a liquidation. There were three separate transactions/events at play, which were described accurately in Endurance's public filings and statements—a fact that Plaintiff ignored in its first Complaint and ignores now. The Amended Complaint is riddled with logical fallacies, contradictory theories of fraud, and recycled 'facts' from the original Complaint that are demonstrably untrue."

Specifically, and pointing to various attached documents in support, defendants asserted that (1) Holdings acquired Endurance in a merger on March 28, 2017, with Endurance remaining intact as a wholly-owned subsidiary of Holdings, (2) then Endurance and International entered into an agreement on September 27, 2017, whereby substantially all of Endurance's assets and liabilities would be transferred to International, and (3) thereafter, Endurance voluntarily liquidated.

¶ 27    Defendants reiterated their argument that Endurance never represented that preferred shareholders would never receive more than $25 per share plus dividends, and that it was merely conclusory to allege that defendants knew when announcing the $25.167 payment that they would later pay an additional $1 per share. Plaintiff's allegation that shareholders complained about the $25.167 price undercut plaintiff's own case that trading in preferred shares above $25.167 suggested foreknowledge of the $1 per share payment because complaining shareholders would have had some hope of an additional payment in response to their complaints and would have traded accordingly.

¶ 28    Plaintiff responded to the motion to dismiss, arguing that its claim "is not that Defendants secretly planned to pay the extra dollar but, to the contrary, that it tried hard to do so by intentionally misclassifying the merger as a liquidation and to falsely claim that the extra $1 payment was just a final distribution of the liquidation." Because the transaction was not a liquidation, $26,717 should not have been deducted from plaintiff's account. Against defendants' argument of three separate transactions, plaintiff argued that there was only one substantive transaction, the March 2017 merger, with the subsequent transactions being internal to defendants and not liquidations, so that the merger price of $26 should have been paid. Plaintiff argued that defendants then improperly paid the $26 merger price when preferred shareholders complained about the $25 liquidation price. Generally, plaintiff argued that its well-pleaded facts and reasonable inferences therefrom must be accepted as true for purposes of a motion to dismiss.

¶ 29    Defendants replied in support of their motion to dismiss, arguing that plaintiff's allegations were not well-pleaded and its inferences were not reasonable. Defendants argued that plaintiff had fundamentally changed its theory of the case from defendants concealing their intent to pay the additional $1 per share to defendants misleadingly describing a merger as a liquidation. They

reiterated their argument that the filings and other documents supported the conclusion of three separate transactions. They argued that plaintiff's distinction between the merger as a substantive transaction and the subsequent transactions as merely internal was not supported by the transactional documents and filings, as a "triggering corporate event is a triggering corporate event." Defendants pointed to Endurance's option to redeem preferred shares at the March 2017 merger to refute the allegation that Endurance was required to redeem preferred shares at $26. While the Certificate indeed "prevented [Endurance] from designating a sale or asset purchase or a merger as a liquidation," Endurance properly treated the merger, the asset purchase agreement, and the liquidation as separate events. While plaintiff argued that the liquidation distributions were merger payments in disguise—"if Endurance paid anything other than $25 per share at the time of the liquidation, the transaction cannot have been a liquidation because the liquidation preference designated in the Certificate is $25 per share"—Endurance never stated that it would pay preferred shareholders no more than $25 per share plus dividends. Defendants argued that (1) its arguments rested upon the documents and filings and thus were an appropriate basis for a motion to dismiss and (2) the documents by themselves showed that, "[i]n the process of winding down Endurance, Defendants made a business decision, weeks after the initial $25 payment, to distribute additional funds to the only remaining shareholders in the company at the time the shares stopped trading."

¶ 30    In January 2019, the trial court dismissed the amended complaint without prejudice, with "one last chance to file an amended complaint." Plaintiff "failed to allege any facts showing that the defendants were required to offer the $26 per share redemption price, given the terms of [Endurance's] Certification," and failed to allege specific facts "showing that a liquidation of Endurance did not occur," or showing that plaintiff "was actually induced or forced to sell its shares at the time the $25 per share redemption price was announced."

¶ 31 While plaintiff alleged that defendants misclassified the merger of Endurance with Holdings as a liquidation and intentionally failed to disclose that preferred shareholders would later be able to sell their shares at the $26 per share price, the documents attached to the amended complaint contradicted those allegations. While section 6(d) of the Certification provided that a merger would not be deemed a liquidation, section 7 regarding share redemption in case of a merger "specifically states that such a redemption is only optional," the court found. The Certification also provided that "in the event of any liquidation, dissolution, or winding-up *** whether voluntary or involuntary," preferred shareholders were entitled to only $25 per share. Thus, under the Certification, "the mere fact that a merger occurred at some point would not necessarily mandate that the defendants indefinitely offer a redemption price of $26 per share."

¶ 32 While plaintiff argued "that its fraud claim is based on the defendants' allegedly intentional misclassification of a merger as a liquidation in October 2017," the court found that plaintiff did not allege specific facts showing that a liquidation never occurred. Endurance's SEC filing of October 6, 2017, attached to the amended complaint, stated that it had on that day "issued a notice of the distribution of the liquidation preference of" $25 per share "[i]n connection with the liquidation of Endurance." Stated another way, plaintiff made "no explanation of why the selling of Endurance's assets and liabilities resulted in a merger and not a liquidation."

¶ 33                    C. Second Amended Complaint & Dismissal With Prejudice

¶ 34 In its February 2019 second amended complaint, plaintiff again summarized its theory of the case:

> "The essence of this case is whether the combination of Endurance and Holdings was a merger or a liquidation and, accordingly, whether Endurance was required to redeem its preferred shares on October 23, 2017 as part of a liquidation. If properly classified as a

merger, as it should have been, according to the SEC filings, Defendants were obligated to pay $26 per share upon redemption, if they chose to exercise that option prior to December 15, 2020. But if classified as a liquidation, as Defendants claim, Defendants would only have to pay $25 per share. Put differently, while Endurance was not obligated to redeem its securities, once it made the choice to do so, it should have been paid the merger price of $26 per share."

"The fundamental, indeed fatal, problem with classifying the subject transaction as a liquidation is that *no liquidation occurred*; no assets were sold, Endurance employees were not terminated, Endurance offices were not closed, phone numbers were not changed and the business continued as usual under a new name, Sompo International Holdings, Ltd., a wholly-owned subsidiary of Sompo Holdings, Inc., the same holding company that had previously merged with Endurance. In effect, Endurance liquidated the company to itself, *i.e.* a sham transaction to save $1 per share; a two-not-three-step scheme Defendants concocted to extinguish the preferred shares at a liquidation price of $25 per share." (Emphasis in original).

¶ 35    In describing the timeline of events, plaintiff alleged that the November 2015 Certificate "protected investors from redemption of the shares (call protection) prior to December 15, 2020 with two (2) exceptions: First, in the event of a <u>merger</u>, the Company is given the <u>option</u> - but is not required - to redeem the shares at a price of $26 per share plus accrued dividends. [Citation to Certificate section 7(2).] Second, however, in the event of a *liquidation*, the Company is *required* to redeem the shares at a price of $25 per share plus accrued dividends as payment in full. [Citation to Certificate section 6.] In short, the only <u>requirement</u> to redeem is in the event of a liquidation." (Emphasis in original).

Plaintiff argued that the September 2017 sale of Endurance assets and liabilities to International provided for Endurance to continue under International's auspices and then voluntarily liquidate, which plaintiff characterized as a "maneuver *** to avoid the precise provisions of Section 6(d) of the Certificate." Because "no assets were sold, Endurance employees were not terminated, offices were not closed, phone numbers were not changed, and business continued as usual under a new name," nothing "was liquidated *for the purpose of Section 6*" but defendants "essentially liquidat[ed] the company to itself and then claim[ed] that it would begin a liquidation." (Emphasis in original.)

¶ 36    Plaintiff alleged that the October 6 announcement of a $25.167 payment caused plaintiff to sell its Endurance preferred shares, and to sell short additional shares "at a price slightly above the liquidation price of $25.167," on the next business day. In support of its allegation that Endurance preferred shares sold before the announcement of the $1 additional per share at a price above the $25.167 liquidation price, plaintiff attached a price chart. Against defendants' claim that the decision to pay the additional $1 per share was a sound business decision, plaintiff alleged that

>       "Defendants' September 27, 2017 filing stated that it had already transferred 'the business as a going concern' to International; therefore, there was no business in existence that could have made a sound business decision. Second, the $236,151,250, which Endurance excluded from the transfer of assets, was enough to pay the liquidation price of $25 per share but *not enough* to pay the $240,736,400 required for payment of the additional dollar per share so that Endurance had neither the right, nor the funds, to pay the additional dollar." (Emphasis in original.)

¶ 37    Count V of the second amended complaint alleged promissory estoppel against International, specifically that the Certificate and the SEC filing of October 6, 2017, "promised

that the only payment to preferred shareholders would be $25 per share in full satisfaction of Defendants' obligation if a liquidation occurred." Plaintiff relied on that promise when it sold its shares and short-sold additional shares on the first business day after October 6, and its reliance was reasonable and foreseeable because all investors rely upon company filings in making trading decisions. Plaintiff's reliance was to its detriment when the announcement of the additional $1 per share caused plaintiff to (1) not receive that $1 per share on the shares it had owned and (2) incur the $26,717 deduction from its account.

¶ 38    Plaintiff attached to the second amended complaint Endurance's SEC filings for November 2015, March 2017, September 2017, and October of 2017, the notice of distribution for the additional $1 per share, and the stock price chart.

¶ 39    Defendants filed a motion to dismiss the second amended complaint under section 2-615 in March 2019, reiterating their argument that their filings and documents contradicted the allegations of the complaint as amended. Endurance's November 2015 Certificate, pursuant to which it issued the preferred shares now at issue, explained that the preferred shareholders were entitled to $25 per share plus any dividends upon a voluntary or involuntary liquidation of Endurance. It also provided that, if Endurance submitted to its common or nonpreferred shareholders prior to December 15, 2020, "a proposal for an amalgamation, consolidation, merger, arrangement, reconstruction, reincorporation, deregistration or any other similar transaction," Endurance had the option, but not the requirement, to redeem the preferred shares for $26 each. A merger—a sale or transfer of substantially all assets—would not be considered a liquidation and thus would not trigger the mandatory liquidation preference payment. The three subsequent transactions involving defendants—the merger, asset sale, and voluntary liquidation—"were undertaken for valid business purposes in connection with the acquisition of Endurance by

Holdings and not in order to avoid any potential payments to the holders of Endurance securities."

Nothing in the documents supported the proposition that the liquidation was part of the earlier merger or that it counted as a liquidation only if Endurance's assets were sold to an unrelated party. Defendants argued that

> "Plaintiff wields Section 6(d) of the Certificate, which provides that a merger or sale or transfer of assets should not be deemed a liquidation for the purposes of the Certificate, like a sword, arguing that Endurance's whole 'scheme' of supposedly liquidating into itself was a method of avoiding the 'requirement' that it pay the $26 merger price. [Citation to second amended complaint.] Plaintiff misreads this provision. Section 6(d) differentiates between mergers, asset transfers, and liquidations precisely because it is meant to avoid a scenario where the Company's merger with another entity or sale of assets would automatically trigger the liquidation of the Series C Preferred Shares. The Certificate is written so mergers, asset transfers, and liquidations have to be separately designated, which is precisely what Defendants did."

Thus, defendants maintained that the "sequence of transactions was not done to 'avoid the precise provisions of Section 6(d) of the Certificate' [as alleged], but rather to comply with the provisions of Section 6(d)." Assuming *arguendo* that Endurance elected to liquidate and pay the $25 per share liquidation preference in October of 2017, rather than redeem the preferred shares for $26 in March 2017 at the time of the Merger, "nothing in the Certificate prohibits that choice."

¶ 40     In reiterating their arguments in support of their earlier motions to dismiss, defendants responded to plaintiff's claim that (1) there was no existing business to make a sound business decision and (2) there was not enough money left after the sale of assets to International to pay $1 per preferred share. As to the former, International obtained Endurance's business as a going

concern and could make business decisions. As to the latter, "the fact that initially Endurance only withheld enough funds from the asset transfer to International to pay $25 per share shows that there was no failure to disclose that Endurance planned to subsequently pay an additional dollar to shareholders." Lastly, regarding promissory estoppel, defendants argued that the only promise made to preferred shareholders was the $25 liquidation preference, and no promise was made that said preference would be the only payment. Attached to the motion to dismiss was the Certification and the merger agreement between Endurance and Holdings.

¶ 41    Plaintiff responded to the motion to dismiss, arguing that its claim was that defendants tried to not make the additional payment "but were ultimately forced to do so," and it was not claiming that defendants knew when they announced the $25.167 per share payment on October 6, 2017, that they would pay an additional $1 per share. Defendants could have redeemed the preferred shares at the $26 merger price but "created a sham liquidation in order to pay $25 per share when, in fact, no liquidation occurred." Plaintiff relied upon the Certification's statement that a sale or transfer of all of Endurance's assets was not a liquidation when plaintiff sold its shares and sold short almost immediately after the $25.167 price was announced. The liquidation was "fraudulent," as was the $1 additional payment, which "should never have been made." Plaintiff argued that "whether the transactions were taken for 'valid business purposes' or 'to comply with the provision of Section 6(d)' are questions properly directed to the fact finder, judge or jury" rather than a motion to dismiss.

¶ 42    Defendants replied in support of their motion to dismiss, reiterating their argument that the documents and filings contradicted the allegations of the complaint. Defendants argued that the key issue in this case was whether they made any misstatements or omissions in their public filings and statements and argued that plaintiff's exhibits showed that they had not. While plaintiff denied

claiming that defendants knew when they announced the $25.167 per share payment on October 6, 2017, that they would pay an additional $1 per share, defendants argued that the second amended complaint alleged that one of defendants' fraudulent acts or material omissions was "intentionally failing to disclose the material fact that some shareholders would or could, four weeks after the announcement, receive an additional $1 per share." Defendants reiterated their argument that plaintiff could not point to anything in the documents providing that Endurance's liquidation would be deemed a liquidation only if Endurance sold its assets to an unrelated party. They added that one of the filings indicated that Endurance ceased to exist as a corporate entity, and "[t]hat is a liquidation."

¶ 43    On May 3, 2019, the court dismissed the second amended complaint with prejudice. It found that plaintiff "failed to make any dispositive changes in its second amended complaint to sufficiently allege its fraud-based causes of action in counts I through IV," reiterating that plaintiff failed to sufficiently allege that defendants were required to offer the $26 per share redemption price under the terms of the Certification, that Endurance was not liquidated, or that plaintiff was forced to sell its preferred shares when the $25 price was announced. Plaintiff "decided to sell its shares at the time that it chose to do so. There is no basis to save [it] from that decision."

¶ 44    Regarding count V on promissory estoppel, the court found that plaintiff did not factually support its allegation that defendants promised that "the only payment to preferred shareholders would be $25 in full satisfaction of Defendants' obligation if a liquidation occurred," as the only promise to preferred shareholders was that they would receive the $25 per share liquidation preference to fulfill section 6(d) of the Certification. Moreover, plaintiff itself alleged that "on December 23, 2017, Defendants completed the distribution of payments at the announced

liquidation price of $25.167 per share" so that defendants' promises in the Certification and SEC filing of October 6, 2017, were fulfilled. This appeal timely followed.

¶ 45                                    III. ANALYSIS

¶ 46    On appeal, plaintiff contends that the trial court erred in dismissing its second amended complaint with prejudice because every count stated claims upon which relief could be granted.

¶ 47                                    A. Securities Law

¶ 48    Plaintiff's second amended complaint was dismissed with prejudice under section 2-615 of the Code, which requires motions attacking civil pleadings to "point out specifically the defects complained of, and [to] ask for appropriate relief, such as: that a pleading or portion thereof be stricken because substantially insufficient in law, or that the action be dismissed, or that a pleading be made more definite and certain in a specified particular." 735 ILCS 5/2-615(a) (West 2018). In ruling on such a motion, "the court may enter appropriate orders either to permit or require pleading over or amending or to terminate the litigation in whole or in part." 735 ILCS 5/2-615(d) (West 2018). A motion to dismiss under section 2-615 challenges whether the allegations of the complaint, taken as true and viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Fillmore v. Taylor*, 2019 IL 122626, ¶ 35. A cause of action should not be dismissed under section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recover. *Doe v. Coe*, 2019 IL 123521, ¶ 31. We review *de novo* an order granting a section 2-615 motion. *Id.* ¶ 20.

¶ 49    In reviewing a dismissal under section 2-615, this court accepts as true all well-pleaded facts and reasonable inferences from those facts, construing allegations in the light most favorable to the plaintiff. *Id.* That said, Illinois is a fact-pleading jurisdiction, requiring plaintiffs to allege facts—not bare conclusions—that give rise to every element of their causes of action. *Id.* ¶ 32;

*Ruiz v. Cal-Ful Condominium Ass'n*, 2019 IL App (1st) 181734, ¶ 33. Similarly, the principle that courts construe pleadings liberally "does not correct or replace defective allegations." *Kopnick v. JL Woode Management Co.*, 2017 IL App (1st) 152054, ¶ 31.

¶ 50    An exhibit attached to a complaint is deemed part of the complaint in reviewing the complaint's sufficiency upon a motion to dismiss. *Slay v. Allstate Corp.*, 2018 IL App (1st) 180133, ¶ 30. Indeed, exhibits "prevail over the allegations." *Kopnick*, 2017 IL App (1st) 152054, ¶ 31. When an exhibit is a contract or other instrument, the proper construction of that instrument is a matter of law. *CitiMortgage, Inc. v. Parille*, 2016 IL App (2d) 150286, ¶ 24.

¶ 51    The elements of a claim under section 12(F) or (I) of the Securities Law are that "the defendant (1) made a misstatement or omission, (2) of material fact, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff reasonably relied and (5) that reliance proximately caused the plaintiff's injuries." *Platinum Partners Value Arbitrage Fund, Ltd. Partnership v. Chicago Board Options Exchange*, 2012 IL App (1st) 112903, ¶ 23. These elements apply to claims under sections 12(F) and (I), except that scienter—intent or knowledge of wrongdoing—is required for liability under section 12(I). *Id.* The elements of a claim under the Consumer Fraud Act are (1) a deceptive act or practice by the defendant, (2) who intended that the plaintiff rely on the deception, (3) that the deception occurred in the course of conduct involving trade or commerce, and (4) proximately caused (5) actual damage to the plaintiff. *Pack v. Maslikiewicz*, 2019 IL App (1st) 182447, ¶ 113. The elements of common-law fraud are (1) a false statement of material fact by the defendant, (2) who knew that the statement was false (3) and intended to induce the plaintiff to act in reliance upon the statement, (4) the plaintiff reasonably relied upon the truth of the statement, and (5) the plaintiff suffered damage as a result of action in reliance upon the statement. *Id.* ¶ 94.

¶ 52     The elements of promissory estoppel are that (1) the defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment. *First Mercury Insurance Co. v. Ciolino*, 2018 IL App (1st) 171532, ¶ 49. The reliance element is similar to the elements of a fraud claim. *Id.*

¶ 53     There is a high standard of specificity for pleading claims of fraud, as the complaint must contain specific allegations from which fraud is the necessary or probable inference, including what representations were made, when they were made, who made them, and to whom they were made. *Id.* ¶ 39.

¶ 54                         B. The Operative Complaint

¶ 55     Here, we begin by setting forth relevant and indisputable facts from the documents attached to the second amended complaint. The 2015 Certificate governing the issuance of Endurance's preferred shares provides in Section 6 on "liquidation rights" that, in the event of a voluntary or involuntary liquidation, preferred shareholders "shall be entitled to receive" after creditors and before common shareholders, "in full" $25 per share plus any declared but unpaid dividends, with mergers and asset sales "not deemed to constitute a liquidation" for purposes of Section 6. Section 6(b) provides for partial payment of the liquidation preference when Endurance's assets would be insufficient to pay $25 per preferred share, while section (6)(c) regarding "residual distributions" provides that once the preferred shareholders receive their liquidation preference, other shareholders would be entitled to be paid from the remaining assets of Endurance. Section 7 of the Certificate regarding "redemption" provides that the preferred shares cannot be redeemed by Endurance prior to December 2020, except, in relevant part, that Endurance "shall have the option" upon a proposed merger to redeem preferred shares at $26 plus any declared but unpaid dividends.

In sum, the Certificate provides that Endurance (1) *must* pay preferred shareholders $25 plus unpaid dividends in case of a liquidation and (2) *cannot* redeem preferred shares before December 2020, except that, in relevant part, it *may* redeem preferred shares at $26 plus unpaid dividends in case of a merger.

¶ 56    Endurance disclosed in a March 2017 SEC filing that Holdings acquired Endurance pursuant to an October 2016 merger agreement so that Endurance survived "as an indirect, wholly owned subsidiary of" Holdings. All common shares of Endurance had already been cancelled and paid as of the disclosure, while the preferred shares at issue would continue as preferred shares of Holdings with the rights provided in the Certificate.

¶ 57    According to a September 2017 SEC filing by Endurance, it had on September 27 entered in an agreement with International, another indirect wholly-owned subsidiary of Holdings, whereby "substantially all of its assets and liabilities" would be transferred to International. Endurance would "commence a voluntary liquidation" and "intends to redeem" preferred shares at $25 per share plus unpaid dividends as provided in the Certificate. A copy of the agreement was attached, providing that Endurance would transfer most of its assets and liabilities to International, including "the Business as a going concern." The assets not transferred under the agreement included $236,151,250 cash.

¶ 58    In an October 6, 2017, SEC filing by Endurance, it announced "[i]n connection with the liquidation of Endurance" and "following the transfer of substantially all of [its] assets and liabilities that it had on that same day "issued a notice of distribution of the liquidation preference of" $25 per preferred share plus an unpaid dividend of $0.1675694 per share on all outstanding preferred shares on October 23, 2017 "in full satisfaction of [its] obligations."

¶ 59    In November 2017, Endurance issued a notice that it would make "a final payment on November 7, 2017" of $1 for each preferred share outstanding on October 23, 2017.

¶ 60    It is against this backdrop that plaintiff alleged in its second amended complaint that "the combination of Endurance and Holdings" was a merger obliging defendants to pay $26 per share when redeeming preferred shares, that no liquidation occurred because Endurance's business continued under International, that the purported liquidation was "a sham transaction to save $1 per share," and that defendants "intentionally perpetuated a fraud on Plaintiff through one or more intentional fraudulent acts or material omissions" in those documents and transactions.

¶ 61    In addition to alleging that the documents made promises and representations that defendants breached by offering the $25.167 per share redemption and the later $1 per share final payment, plaintiff alleged that "contrary to normal trading practice, shares continued to be bought at a price of $25.30" after the October 6 announcement of a $25.167 per share payment, after plaintiff sold its Endurance preferred shares and sold short other such shares "at a price slightly above the liquidation price of $25.167," and "after investors complained." Plaintiff claimed that "it may be reasonably inferred that certain shareholders knew or expected an additional payment would be made." Plaintiff also alleged that defendants did not make a sound business decision to pay the extra $1 per share because

> "[d]efendants' September 27, 2017 filing stated that it had already transferred 'the business as a going concern' to International; therefore, there was no business in existence that could have made a sound business decision. Second, the $236,151,250, which Endurance excluded from the transfer of assets, was enough to pay the liquidation price of $25 per share but *not enough* to pay the $240,736,400 required for payment of the additional dollar

per share. In short, Endurance had neither the right, nor the funds, to pay the additional dollar." (Emphasis in original.)

¶ 62                                    C. Our Findings

¶ 63    We find that the dismissal of the second amended complaint with prejudice was not erroneous. It was insufficient to state a cause of action upon which relief could be granted, and it is clearly apparent that no set of facts could be proved that would entitle plaintiff to recover.

¶ 64    First and foremost, we conclude from the documents attached to the complaint as amended that defendants performed all their obligations and did not breach any promises made, under those documents. Plaintiff conflates two different obligations under the Certificate: (1) paying $25 per share for a liquidation and (2) having the option to pay $26 per share for a merger as an exception to the ban on redemptions until December 2020. Plaintiff then relies upon that conflation in arguing that the merger with Holdings was real but the sale to International and liquidation of Endurance were a sham because Endurance was sold to International, another Holdings subsidiary, and Endurance's business continued as International. However, we find that the documents do not support plaintiff's proposition that the asset sale to International and the liquidation pursuant to that sale were a sham. In other words, the documents do not support the proposition that defendants breached their obligations or promises by making a $25.167 per share liquidation payment merely because the duly-disclosed Endurance-International asset sales transaction, including Endurance's liquidation under that sales agreement, followed months after the duly-disclosed merger of Endurance with Holdings and involved another Holdings subsidiary rather than an unrelated party.

¶ 65    We also find that defendants did not violate any obligation or breach any promise under the documents by paying the additional $1 per preferred share, in light of the facts that Section 6

of the Certificate provides that the $25 (plus dividends) per share liquidation payment is ahead of Endurance's common shareholders, but there were no common or other shareholders in Endurance following the Endurance-Holdings merger, as duly disclosed in Endurance's March 2017 SEC filing. Especially in light of the provision for residual distributions in section 6(c) of the Certificate, whereby other shareholders of Endurance would be paid after the preferred shareholders, we do not consider the words "in full" in section 6(a) to mean that Endurance was prohibited from paying preferred shareholders more than $25 (plus dividends) per share in a liquidation when, as here, there were no longer any shareholders of Endurance but the preferred shareholders.

¶ 66    Plaintiff would have us infer defendants' fraudulent intent in structuring the transactions with Endurance, including the payment of an additional $1 per preferred share, from (1) the allegations of "unusual market activity" in preferred shares above the $25.167 price announced on October 6, 2017, "from which it may be reasonably inferred that certain shareholders knew or expected an additional payment would be made," (2) claims that Endurance could not make a sound business decision because it ceased to exist, and (3) assertions that Endurance had about $236 million left after the liquidation but the $1 per share redemption would cost about $240 million. However, we conclude that fraud or deceptive intent is not the necessary or probable inference from those allegations. To proceed out of order, the allegation that Endurance could not have made a sound business decision because it ceased to exist is disingenuous. Since International purchased Endurance as a going concern, International could make business decisions regarding Endurance preferred shares. It is not a necessary or probable inference that Endurance could not pay the $1 per share, since the $236 million left to Endurance was not the only asset of Endurance or other source of funds for paying the $1 per share and since, as plaintiff alleged elsewhere in the complaint, the $1 per share cost $9.2 million.

¶ 67    Lastly, as to the allegedly unusual trading pattern in Endurance preferred shares, we find that to be the most speculative allegation. Plaintiff alleged that, after Endurance announced the $25.167 per share payment, plaintiff sold short "at a price slightly above the liquidation price of $25.167," shareholders complained, and shares traded at $25.30 per share. When there were—by plaintiff's own allegations—shareholders nursing a hope of a payment beyond the $25.167 per share, trading at somewhat above $25.167 but significantly less than $26 per share does not create a probable or natural inference that some shareholders knew an additional payment was coming.

¶ 68                                        IV. CONCLUSION

¶ 69    Accordingly, the judgment of the circuit court is affirmed.

¶ 70    Affirmed.

---

**No. 1-19-1072**

---

| | |
|---|---|
| **Cite as:** | *Feis Equities, LLC v. Sompo International Holdings, Ltd.*, 2020 IL App (1st) 191072 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-L-3568; the Hon. Daniel J. Kubasiak, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Steven J. Rosenberg and M. Elysia Baker, of Golan Christie Taglia LLP, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Gail E. Lee and Charles F. Smith, of Skadden, Arps, Slate, Meagher & Flom LLP, of Chicago, for appellees. |

---